May it please the court. Good afternoon, your honors. My name is Rodrigo Canedo. I am counsel for the petitioner Benjamin Lizardi and I would like to reserve two minutes for rebuttal. Your honors, the main issue in this case is whether Mr. Lizardi qualifies for protection under the Convention Against Torture, specifically as it relates to his ability to safely relocate in his home country of Mexico. I would just note that when the immigration judge initially took on this matter and he was reviewing the case, he said this case was close. I quote, the Board of Immigration Appeals, when they took on this case, they applied the clearly erroneous standard to the factual findings of the immigration judge in regards to whether Mr. Lizardi could safely relocate to his home country. However, even though the board indicated that was the review they would do, we don't believe they correctly applied that review in this particular case. They specifically cited matter of AB and they said that the board may only find clear error when the findings of facts are illogical, implausible, or without support and inferences that may be drawn from the facts in the record. However, looking at specific events in this case, again, we don't think they correctly apply that standard. The first key event was the shooting at the border in Tijuana. This occurred in 2012, so this was the last time that Mr. Lizardi came back from Mexico to the U.S. He indicated that he was shot at in Tijuana. Now, previous to this, Mr. Lizardi had just escaped the Chiqui Manique criminal group. In that occasion, they had kidnapped him, they severely beat him, and when he was on the ground, one of their members actually cut off his hand. It was at that point that Mr. Lizardi told this group that he would work for them, so eventually they let him go, and that's when he fled to the United States. However, the immigration judge gave absolutely no weight to this event when he decided on the issue of relocation. However, we have to look at the fact that he escaped to the U.S. right after this group had him go, and right after, you know, he told him he would work for them, and he actually didn't. The fact that this group also, the fact that Mr. Lizardi believes that this group had shot at him also aligns with the pattern of violence that his group has inflicted on Mr. Lizardi in the past. As the record indicates, in 1998, this group also shot at Mr. Lizardi when he was in the state of The BIA, what I'm wondering is whether there is a burden of, whether the BIA applied the right burden of proof issue here to this series of questions, of actual questions that you're now talking about. The BIA opinion says, regardless of whether the applicant has been tortured in the past, the applicant has the burden of proof with respect to the ability to relocate within county of proposed removal. And then it has apparent, recites Maldonado, and has a parenthetical that, I'm not sure, accurately recites Maldonado, so have you looked into that question at all, or do you think it matters where the burden is in this case? Yes, your honor, because... It's a totality of circumstances issue that's up to the trial of that. Right, the Board of Immigration Appeals, excuse me, seem to disagree with the judge's findings of fact. Again, what I stated was that they applied the clearly erroneous standard. They indicated that the judge had not violated that standard. Your honor, I want to know, was the board correct when it said that the applicant has burden of proof with respect to the ability to relocate within the county of proposed removal? Is that correct? Yes, the petitioner has that burden. I'm sorry? The petitioner has the burden. Really? Doesn't our Maldonado opinion say otherwise? But the ability to relocate is one factor in the overall analysis, and the responder need not show that relocation within the... This says would be impossible, but that's not what the opinion says. The opinion says that there's an ability to relocate is one factor in the overall analysis. Right, your honor. All right, so go ahead. Yeah, my understanding, just looking at the big picture, looking at the fact that he has to prove it's more likely than not that he would be tortured if returned to his home. Right, overall, overall. Yes, overall. I think that it's just one factor that goes back to that main issue, more likely than not standard. The petitioner, I think, can only say what happened to him, and the judge determined that those factors was not enough. I'm sorry if that doesn't answer your question directly. Okay, go ahead. Okay, so besides the shooting in Tijuana, the other event in the case was the disappearance of petitioner's son in Hidalgo. And I would just note that the judge dismissed the petitioner's belief that he thought this group that had shot at him in Tijuana was also the ones that had attacked him previously in 1998. He just said that that was speculative. So my understanding that because the petition was found credible already, that was improper for the judge to just dismiss it outright as speculation. So going to the issue of the disappearance of the petitioner's son, so his son disappeared a couple months after Mr. Lizardi had escaped this criminal group in the state of Mexico. Again, this goes back to the reason that this group would target him or his family. He had just promised them he was going to work for them, but instead he fled to the United States. And similar to the shooting, the fact that his son went disappeared also aligns with the pattern of kidnapping that this group has done before. Mr. Lizardi was kidnapped in 1998, and he was also kidnapped again in 2012. So this group has shown that they're very capable of performing this type of violent act on Mr. Lizardi. And similar to the issue of the shooting in Tijuana, Mexico, the judge simply dismissed this. He said it's just pure speculation, and he gave it no weight into deciding the issue of whether the petitioner could safely relocate to Mexico. The BIA, which I might ask a question, the BIA didn't discuss this. But one of the things that the IG, I believe, discussed is the fact that Lizardi was able to live in the Puebla state for three years. So what significance is that in this analysis? Yes, Your Honor. You're right, Your Honor. The judge did imply that Mr. Lizardi was relatively safe during that period. He acknowledged that that area of Puebla was approximately 450 miles away from where the initial attacks occurred. But as the record also shows, Mr. Lizardi moved on four separate occasions when he was living in Puebla. He also indicated that he believed that he was being followed. Furthermore, his wife, in a letter to the court, also indicated that she believed that this criminal group would be able to find Mr. Lizardi. So when I wrote the brief, I actually cited the case of Hale v. Holder. So in that case, the Ninth Circuit Court of Appeals did indicate that in situations where an applicant relocates in their home country, just because they're not physically harmed, that doesn't necessarily mean that it's safe to live in that particular area. And we believe that's a very similar situation as in the case here with Mr. Lizardi. So those were some of my arguments as it relates to the issue of relocation. I also made some arguments as to whether Mr. Lizardi was provided a full and fair hearing. So I'm not going to be able to get through all of those. But I would just note one of the main ones was the fact that on the day of the individual hearing, we did submit Exhibit 6. And that was a very important exhibit. It contained the petitioner's pre-hearing brief. It contained six country conditions reports. It also contained key documentation about the disappearance of Mr. Lizardi's son in Mexico. However, on the day of the hearing, the judge, I think, not on purpose, but I think he just not had a chance to review that documentation. However, the judge... Can I ask what was the information about the son's disappearance in Mexico that was attached? Yes. So that information detailed basically when he disappeared, how he disappeared, the complete report made about exactly what happened during the disappearance of Mr. Lizardi's son. So essentially, all the details of a missing person's report were in that exhibit. But all of this material is in the record, right? This is in the record, Your Honor. And it was available for the BIA and it's available to us? Yes. What's the consequence of what... I mean, yes, judges should read the material, but what is the exact consequence in terms of judging clear error? It's in the record and we can determine whether he should have read it, whether he read it or not. Well, Your Honor, considering that the only issue, the only reason that Mr. Lizardi was denied protection at the Convention Against Torture was the issue of relocation. And all those documents relate directly to the issue of whether Mr. Lizardi could safely relocate to his home country. Again, these were 90 pages of documents. It wasn't like a short, a small exhibit, but the judge still decided this matter on the same day. And again, I would emphasize that the judge himself indicated that this case was, quote, close. So he didn't have enough time, is essentially what I'm saying, Your Honor, about having time to review those documents that do relate to the issue of safe relocation. And may I ask you, this is Judge Schroeder, may I ask you again why we should accept his supposition that the shooting when he was crossing at Tijuana was by the same group that was after him at his home? Yes, Your Honor. So as I described, there was plenty of circumstantial evidence to support that this group, again, this was right after he had escaped this group. So there's the timing of it. It was right afterwards, right after he escaped them. And again, there was a, this group, there was a pattern of this type of violence. So he indicated he was shot at trying to cross into Tijuana. In 1998, this group had also shot at him. So it shows that they're capable of those type of violent actions. So we don't have to just rely on his belief. There's also circumstantial evidence and just logical inferences that can be drawn that this group did go after him in Tijuana. Is there something, there's a statement or a supposition in the VA opinion, the government's brief, that the Chiki Maniki gang only operated in a small area. There's something in the records. I think when the petitioner was asked about that, he gave his best understanding. I mean, it was impossible for him to know exactly how spread out that group is. But what we're asking the court to look at is, you know, look at the case holistically, see all the different locations Mr. Lizardi was harmed. I believe his neighbor also wrote a letter. Again, this was just his opinion, but the neighbor wrote a letter indicating that he believed that this group was affiliated with the Gulf cartel. Again, that was just his opinion, though. Okay. Do you want to reserve the remainder of your time for rebuttal? Yes, your honor. Thank you. Okay. Ms. Perry. May it please the court. Roseanne Perry on behalf of the Attorney General. Substantial evidence supports the agency's denial of Mr. Lizardi's CAT application. He failed to meet his burden of proof to show that it's more likely than not that he'll be tortured in Mexico or upon his return to Mexico. And the board and the agency ultimately came to the correct conclusion that he could internally relocate in Mexico. Where did they think he could relocate? Well, the IJ made the night decided affirmative evidence that he could relocate to Puebla State. He noted that he previously relocated to Puebla State in 2001. And that it was 455, 50 miles away from Mexico State. But what do you what do you make of the evidence that he had to move around when he was in Puebla State and he thought he was being followed? Well, there's no persuasive evidence that he was being followed by the Chican Minike. It doesn't there's no evidence of that in the record that he didn't present evidence of that in the record. So, well, whether with regard to whether it was a reasonable relocation, it doesn't matter whether he's being followed by the Chimaniki or somebody else. The fact is that he said that there were people asking after him and he wasn't safe and he had to move around for that purpose. I don't think it matters whether it's the Chimaniki or somebody else. Well, he's stating that the Chican Minike were the ones that were after him. So, no, but with regard to whether it's a reasonable relocation. That's the standard, right? Yes. Does it matter that he's not safe in Puebla State? Does it matter why that he's not safe? Somebody else. Well, he's claiming that he's been attacked and by the Chican Minike. But I this is a discrete question. It has to do with the reasonableness of the relocation, whether he is whether it is reasonable to say that he could have relocated in Puebla State. And for that purpose, why does it matter whether it's the Chimaniki or not? Uh. Well. It's his ultimate burden to show that he would be tortured and he hasn't shown that anyone in Puebla State is after him. May I ask you a question on the burden? I mean, it's following up on Judge Berzon's question previously. BIA said he had the burden of proof with respect to the ability to relocate. Citing Maldonado and I agree with her. I don't think Maldonado says that at all. So just assuming assuming hypothetically and the IJ said he didn't have the bird. So assuming hypothetically that the BIA was wrong on the burden, what do we do about that? Well, they did mistake the burden, but they did cite Maldonado, which says that the burden isn't on the applicant to prove that it's impossible to move. And the IJ did get it right. Right. And then they said it is on the petition. Right? Right, they did. But did you acknowledge in your brief that they applied to Washington? No, I don't believe so. But they ultimately, the IJ ultimately got it right. And the board stated that the IJ's decision was not clearly erroneous. So the board relied on the IJ's decision. And the IJ did find that there was affirmative evidence that there's a specific area where Mr. Lizardi could relocate. So was there any evidence in the record, aside from the Puebla state, that there was another another area that he could relocate? The IJ didn't find anything that he could relocate to another state. Okay. Ms. Perry, you have anything else you want to talk to us about today? No, if there are no further questions, the respondent respectfully requests that the court deny the petition for review, as petitioner has not shown that it is more likely than not that he would be tortured upon his removal to Mexico. Thank you. Rebuttal? Senator, I don't have much to add. Just to point out that the only issue in this case, as it relates to Mr. Lizardi's qualifications for protection under the Convention Against Torture, was the issue of relocation. The rest of the case seems to have been fully developed in the immigration court by the immigration judge. And if this court does find that Mr. Lizardi did meet that burden, then we ask that he be granted protection under the Convention. Okay. Thank you both for your arguments today and appearing by video. I know it's probably not the most convenient, but we appreciate hearing from you today. The case just heard will be submitted for decision, and we'll proceed to the next case on the oral argument calendar. Thank you, Your Honors. Thank you.
judges: Schroeder, Thomas, Berzon